UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>          Plaintiff,<br>    v.<br>OLIVER M. HENDERSON,<br>          Defendant. | Case No.  16-cr-00142-KAW-1<br><br>**ORDER GRANTING MOTION TO SUPPRESS VIDEO AND AUDIO RECORDINGS**<br><br>Re: Dkt. No. 14 |

The United States brings this action against Defendant Oliver Henderson, alleging that Defendant violated the Migratory Bird Treaty Act, 16 U.S.C. § 703(a), by taking, killing, and possessing a migratory bird. (Dkt. No. 1.) Pending before the Court is Defendant's motion to suppress video and audio recordings obtained during the execution of a search warrant at Defendant's residence on April 26, 2012. (Def.'s Mot. to Suppress, Dkt. No. 14.) Upon consideration of the moving and responding papers, as well as the arguments presented at the October 26, 2016 motion hearing, and for the reasons set forth below, the Court GRANTS Defendant's motion to suppress.

**I.  BACKGROUND**

At issue in this motion is the search warrant issued on April 20, 2012. (Search Warrant, Dkt. No. 14-2.) The search warrant allowed for the search of Defendant's residence, and the seizure of: (1) "[a]ny raptors, dead or alive, and any parts thereof"; (2) "[a]ny devises which could be used to capture or trap raptors"; (3) any firearms and ammunition; (4) "[a]ny and all records relating to the sale, purchase, or possession of any firearms/ammunition, including receipts, emails, shipping documents, personal correspondences, pictures, certificates, and other documents, video and audio recordings relating to such firearms and ammunitions"; and (5) [a]ny and all

records relating to the take of raptors, including receipts, emails, shipping documents, personal correspondences, pictures, certificates, and other documents, video and, audio recordings relating to such raptors." (Search Warrant, Attachment B.)

The search warrant was supported by an affidavit by Special Agent Alfred Colby. (Search Warrant, Affidavit.) Special Agent Colby explained that on June 1, 2011, an injured Peregrine Falcon was found approximately one block from Defendant's residence, having been shot with pellets consistent with shotgun ammunition. (*Id.* at ¶ 4.) On June 10, 2011, another injured Peregrine Falcon was found several blocks from Defendant's residence, also having been shot with pellets. (*Id.* at ¶ 5.) When investigating these shootings, Warden McCoy discovered Defendant bred Roller pigeons. (*Id.* at ¶ 7.) Agent Colby noted that pigeon breeders frequently had problems with birds of prey taking their pigeons, and that breeders would often shoot and trap birds of prey to prevent loss of their pigeons. (*Id.*) On June 26, 2011, Agent Colby and Warden McCoy interviewed Defendant, and found that he had been convicted of several felonies and was therefore prohibited from possessing a firearm and ammunition. (*Id.* at ¶ 8.) Defendant allowed Agent Colby and Warden McCoy onto his property, but denied having shot any Peregrine Falcons, instead stating that he only had problems with Cooper's Hawks and Sharp-shinned Hawks. (*Id.* at ¶ 9.) Defendant also denied having a firearm. (*Id.*)

On July 1, 2011, Agent Colby and Warden McCoy discovered two dead birds under a dead tree within a block of Defendant's residence. (*Id.* at ¶ 10.) The two dead birds were a Cooper's Hawk and a Sharp-shinned Hawk. (*Id.*) The Sharp-shinned Hawk had been shot with pellets consistent with those found in the injured Peregrine Falcons, while the Cooper's Hawk had a broken neck. (*Id.* at ¶ 11.) Based on interviews with neighbors, Agent Colby learned that they had heard what they believed to be gun shots in the vicinity of their neighborhood in June 2011. On July 13, 2011, Agent Colby placed two trail cameras below the dead tree. (*Id.* at ¶ 13.) On August 1, 2011, Agent Colby retrieved a memory card from one of the cameras, but the memory card contained no photos of anyone trampling the area or removing birds of prey. (*Id.*)

On August 3, 2011, the remains of a Peregrine Falcon were found at Fruitvale Bridge. (*Id.* at ¶ 14.) The bird's stomach contained a band embossed with "NCRC 796." (*Id.*) "NCRC" stood

2

for "Northern California Roller Club," a club comprised of Roller pigeon hobbyists. (*Id.*)

On October 20, 2011, the trail cameras still had no photographs of evidentiary value. (*Id.* at ¶ 15.) Around that time, Agent Colby and Warden McCoy observed Defendant in his backyard flying his pigeons. Agent Colby also recognized a raptor trap set and baited with live pigeons. (*Id.*)

On January 2, 2012, an injured Sharp-shinned Hawk was found approximately a block from Defendant's residence, close to the dead tree. (*Id.* at ¶ 16.) The bird had been shot. (*Id.*)

Based on this investigation, Agent Colby sought a search warrant of Defendant's residence. The warrant was issued by the undersigned, and executed on April 26, 2012. (Search Warrant; Colby Dec. ¶ 4, Dkt. No. 16.) During the search, the Government found a raptor trap, a book and computer printouts related to identification of birds of prey and how to trap such birds, a loaded pellet rifle, and a digital video recorder ("DVR") that was recording from security cameras located around the property. (Investigation Report at 1, Dkt. No. 14-1.) The security cameras were visible to Agent Colby when he walked around Defendant's property, although he had not seen any cameras when he was at Defendant's residence in June 2011. (Colby Dec. ¶ 6.) One of the cameras was positioned to view activity in the back yard. (Colby Dec. ¶ 7.) In the back bedroom of the residence, Agent Colby found a monitor connected to the DVR, which appeared to be recording video captured by the security cameras. (Colby Dec. ¶ 8.) Agent Colby concluded the DVR would contain recordings of any activity in the back yard, including Defendant's use of the raptor trap or shooting at raptors, and seized the DVR. (Colby Dec. ¶¶ 9-10.)

## II.   STANDARD OF REVIEW

The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. Thus, a warrant may be issued only "upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *Id.* Probable cause exists when "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). In determining whether there is probable cause, the issuing magistrate must take "a practical, common-sense" approach and consider "all the circumstances set forth in the affidavit before [the

3

1  judge]" to decide if "there is a fair probability that contraband or evidence of a crime will be found
2  in a particular place." *Id.* The reviewing court, in turn, must determine if "the magistrate had a
3  substantial basis for concluding that probable cause existed." *Id.* at 238-39 (internal quotation and
4  modification omitted). A magistrate's probable cause finding "will not be reversed absent a
5  finding of clear error." *United States v. Pitts*, 6 F.3d 1366, 1369 (9th Cir. 1993).

### III.  ANALYSIS

#### A.  Specificity

Defendant challenges the seizure of the video and audio recordings obtained during the execution of the search warrant, on the ground that the warrant lacks specificity. (Def.'s Mot. to Suppress at 3.) "The Fourth Amendment's specificity requirement prevents officers from engaging in general, exploratory searches by limiting their discretion and providing specific guidance as to what can and cannot be searched and seized." *United States v. Adjani*, 452 F.3d 1140, 1147 (9th Cir. 2006). "Specificity has two aspects: particularity and breadth. Particularity is the requirement that the warrant must clearly state what is sought. Breadth deals with the requirement that the scope of the warrant be limited by the probable cause on which the warrant is based." *In re Grand Jury Subpoenas Dated Dec. 10, 1987*, 926 F.2d 847, 856-57 (9th Cir. 1991)

Defendant argues that the warrant lacks particularity because it failed to impose a distinction between traditional records and electronic data, and because there was no probable cause to search through electronic data such as e-mails, videos, and audio recordings. (Def.'s Mot. to Suppress at 4-5.) Alternatively, Defendant argues that the warrant is overbroad because it allows the search and seizure of video and audio recordings without probable cause. (*Id.* at 5.) The Court agrees that the affidavit contains insufficient probable cause to allow the search and seizure of electronic data, such as the DVR and the video and audio recordings contained therein.

In general, "probable cause must exist to seize all the items of a particular type described in the warrant." *In re Grand Jury Subpoenas*, 926 F.2d at 857. "Courts have repeatedly invalidated warrants authorizing a search which exceeded the scope of the probable cause shown in the affidavit." *Id.* Here, there are no statements in Agent Colby's affidavit indicating that any electronic evidence, such as the DVR containing recordings from the security cameras, would be

4

found at Defendant's residence.[1] The only reference in the affidavit to any electronic device was to the two trail cameras placed by Agent Colby, from which no photographs of evidentiary value were recovered. (Search Warrant, Affidavit ¶¶ 13, 15.) Otherwise, the affidavit discussed only physical evidence, such as the raptor trap, and Defendant's possible motivation for killing raptors. Despite the lack of any reference to the possible existence of video or audio evidence, the warrant's list of items to be seized included audio and visual recordings, buried in a list of other evidence for which there was probable cause to be seized. Nothing in the affidavit alerted the undersigned that audio and video evidence would be sought, resulting in the search warrant's request for audio and video recordings being easily overlooked.

In short, when establishing probable cause to search Defendant's residence, Agent Colby's affidavit focused on the proximity of injured and dead raptors to Defendant's residence, Defendant's raising of Roller pigeons, and the presence of a raptor trap. None of this information, however, established the likelihood of electronic evidence at Defendant's residence, and there was no connection between these activities and any electronic device. *Compare with Dougherty v. City of Covina*, 654 F.3d 892, 898-99 (9th Cir. 2011) (finding that a search warrant lacked probable cause to search a suspect's home computer and electronic equipment for child pornography where the affidavit included allegations of child molestation but no evidence of receipt of child pornography or even verification that the suspect "owned a computer or [other electronic media] or had internet service or another means of receiving child pornography at his home"); *United States v. Winn*, 79 F. Supp. 3d 904, 919 (S.D. Ill. 2015) (finding warrant authorizing seizure of "any or all files" contained on a cell phone for evidence of public indecency was overbroad where there was only probable cause to believe that photos and videos—and not calendar entries, contacts, text messages, e-mails, or internet history—would contain evidence of a crime). Thus, there was an absence of probable cause to seek the audio and video recordings Defendant now seeks to suppress.

---

[1] Indeed, Agent Colby stated in his declaration that when he sought the search warrant, he had no reason to believe security cameras existed on the property as he had not seen any cameras when he was at Defendant's residence in June 2011. (Colby Dec. ¶ 6.) It was only during the execution of the search warrant that the security system was discovered.

5

1	The Government relies on cases that are distinguishable because in each of those cases, the affidavit established probable cause for why there would be electronic evidence.  For example, in *Adjani*, the Ninth Circuit found sufficient probable cause to search a computer that belonged to an individual who lived with the suspect, but who herself was not a suspect.  452 F.3d at 1142-43.  The Ninth Circuit explained that the crime in question had involved the use of a computer, and therefore there was probable cause to believe that evidence of the crime would be found on computers accessible to the suspect in his home.  *Id.* at 1147.  Similarly, in *United States v. Schesso*, the search was for the defendant's computer system based on the sharing of a child pornography video on the internet.  730 F.3d 1040, 1045-46 (2013).  Not only did this establish a connection with the defendant's computer system, but the Ninth Circuit further explained that the website used by the defendant was frequently used for child pornography, leading to a reasonable inference that the defendant would possess other videos.  *Id.*; *see also United States v. Brobst*, 558 F.3d 982, 993-94 (9th Cir. 2009) (permitting search of electronic media based on a witness's observation of an illicit photography in the defendant's home because the photograph looked to be printed from the internet); *United States v. Lacy*, 119 F.3d 742, 746 (9th Cir. 1997) (permitting seizure of the defendant's entire computer system where the government knew that the defendant "had downloaded computerized visual depictions of child pornography").  In short, each of these cases established a connection with the electronic devices that were seized.  By contrast, the affidavit at issue makes no such connection to any electronic device, and does not establish any basis for believing that electronic evidence would exist.

The Government further contends that a "commonsense reading" of the affidavit, specifically Agent Colby's "observation that Defendant cared for about 250 pigeons in the backyard area and the fact that pigeon fancies [*sic*] often make efforts to protect their pigeons against birds of prey," could have led the undersigned to "properly conclude[] that there was a 'fair probability' that video evidence would be found based on the Agent's request for video, the prevalence of home security video systems generally, and the commonsense proposition that someone who houses 250 pigeons in the backyard and wants to monitor whether those pigeons are being killed by raptors would be someone more likely to have such a surveillance system."

(Gov.'s Opp'n at 8, Dkt. No. 15.) This argument is, at best, a stretch. The mere fact that an individual has pigeons and that pigeon breeders often shoot and trap raptors to prevent loss of pigeons does not automatically lead to an assumption that the individual would possess security cameras. The Court therefore concludes that there was insufficient probable cause to search for video and audio recordings.

### B. Good Faith

The parties dispute whether the good faith reliance exception applies such that suppression is not required. (Def.'s Mot. to Suppress at 8; Gov.'s Opp'n at 9.) Under the good faith reliance exception, "the officers must have relied on the search warrant in an objectively reasonable manner." *United States v. Crew*, 502 F.3d 1130, 1136 (9th Cir. 2007). The good faith exception does not apply in the following four circumstances:

> (i) where an affiant misleads the issuing magistrate or judge by making a false statement or recklessly disregarding the truth in making a statement; (ii) where the magistrate or judge wholly abandons her judicial role in approving the warrant, acting only as a "rubber stamp" to the warrant application rather than as a neutral and detached official; (iii) where the warrant is facially deficient in detail as to the place to be searched or the things to be found that the officers could not reasonably presume it to be valid; or (iv) where the affidavit upon which the warrant is based is so lacking in indicia of probable cause that no reasonable officer could rely upon it in good faith.

*Id.* In these four circumstances, "reliance is *per se* unreasonable." *Id.*

Defendant argues that the affidavit was so lacking in indicia of probable cause that an officer's reliance is objectively unreasonable. (Def.'s Mot. to Suppress at 8.) The Court agrees.[2] As discussed above, there is no probable cause to establish that electronic evidence such as the audio and video recordings would exist, let alone that there would be evidence of the crime contained on any such recordings.

The Government's reliance on *United States v. Needham* is distinguishable. (Gov.'s Opp'n at 10.) There, the officers "relied on a warrant predicated on the bare inference that those who

---

[2] Although Defendant does not make the argument, the Court would also agree that the warrant is facially deficient in detail as to the things to be found that the officers could not reasonably presume it to be valid. *See* Discussion above at III.A.

7

molest children are likely to possess child pornography." 718 F.3d 1190, 1195 (9th Cir. 2013). The Ninth Circuit found that this was insufficient to establish probable cause, but that the good faith exception applied because "the law in this circuit had not been clearly established regarding whether allegations of sexual misconduct of molestation at a place of work provide probable cause to search a residence for child pornography in the absence of an explanation tying together the two crimes." *Id.* (internal quotation omitted). Due to the lack of settled law on this issue, the Court concluded that good faith exception applied. This case, however, does not concern an unsettled area of law. Rather, it concerns the lack of any statement in the affidavit that suggests video or audio evidence was likely to be found at Defendant's residence. Thus, the Court concludes that the good faith exception does not apply in this case.

### C.  Plain View Doctrine

In the alternative, the Government argues that because it was entitled to be at Defendant's residence, the Government was entitled to seize the DVR under the plain view doctrine. Under the plain view doctrine, "if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant." *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993). The parties dispute whether the "incriminating character" prong is satisfied in this case. (Gov.'s Opp'n at 11; Def.'s Reply at 13, Dkt. No. 19.)

In the Ninth Circuit, "under the plain view doctrine[,] the incriminating nature of an object is generally deemed 'immediately apparent' where the police have probable cause to believe it is evidence of crime." *United States v. Chesher*, 678 F.2d 1353, 1357 (9th Cir. 1982) (internal quotation omitted). Defendant argues that the DVD was not incriminatory because they did not know they had evidence until they viewed the DVD and saw what it contained. (Def.'s Reply at 14.) According to Agent Colby's declaration, however, Agent Colby stated that he saw the monitor connected to the DVR "that appeared to be recording the video captured by the camera surveillance system." (Colby Dec. ¶ 8.) From this, Agent Colby concluded that the DVR "was evidence of [Defendant's] crimes because it would contain recordings of activity in the back yard including [Defendant] using the illegal raptor trap and shooting at birds of prey." (Colby Dec. ¶

8

9.) Because Agent Colby saw security cameras recording the back yard where the pigeons were kept, and the DVR was recording the video captured by the security cameras, he could reasonably conclude that the DVR would contain evidence of crime. Thus, the incriminating nature of the DVR was immediately apparent, and Agent Colby had a basis to seize the DVR.

Defendant further argues, however, that even if Agent Colby could seize the DVR under the plain view doctrine, the Government violated Defendant's Fourth Amendment rights by "viewing its content without first obtaining a warrant to do so." (Def.'s Reply at 14.) The Court agrees. In *United States v. Miller*, the Ninth Circuit explained that "the plain view exception permits seizure of incriminating evidence, but does not authorize a warrantless search for concealed evidence." 769 F.2d 554, 557 (9th Cir. 1985). At the hearing, the Government argued that *Miller* is inapposite because this was not a warrantless search, as the search was conducted pursuant to a search warrant that specifically allowed the search of audio and video recordings. This argument, however, relies on the portions of the search warrant that the Court, as discussed above, has found to be invalid due to the complete lack of probable cause to search for audio and video recordings. When a portion of a search warrant lacks probable cause and is "facially deficient[,] any evidence obtained in reliance upon [that section] must be suppressed." *United States v. Washington*, 797 F.2d 1461, 1473 (9th Cir. 1986). Otherwise, allowing the Government to rely on an invalid portion of a search warrant would undermine well-established Fourth Amendment jurisprudence that requires specificity of search warrants. *See Adjani*, 452 F.3d at 1147. Under the Government's theory, the agents could simply obtain general, overbroad warrants with lists of everything that they may or may not find during a search, creating a "catch-all" warrant that would permit both the seizure and search of evidence for which there was no probable cause to believe existed.

Because there was no valid search warrant, the Court finds that *Miller* applies in this case. There, the Ninth Circuit found that the officers had validly seized a plastic bag that had fallen out of the defendant's suitcase under the plain view doctrine because "[t]he presence of the white powder, the manner in which the plastic bag and suitcase were taped, and the presence of other similarly packaged bags in [the defendant's] suitcase would have led a reasonably cautious person

9

to believe that the plastic bag contained contraband." *Id.* at 557. But while the seizure itself was proper, the officers' subsequent "inspection of the bag and its contents went well beyond the minimal intrusion that is permitted in a plain view seizure." *Id.* The Ninth Circuit explained that while:

> [t]he government's suspicion that the containers concealed [contraband], and society's interest in preserving incriminating evidence, outweighed the defendant's possessory interests in the seized items[, a]fter seizure, however, the risk of losing the evidence no longer existed. [Citation.] The defendant's expectation of privacy in the closed, opaque containers then raised a duty to seek a search warrant from a neutral judge or magistrate.

*Id.* at 558; *see also United States v. Wright*, 667 F.2d 793, 799 n.6 (9th Cir. 1982) (citing with approval *State v. Turkal*, 93 N.M. 248 (1979) for the proposition that "contents of tapes not in plain view because incriminating nature could not be determined without listening to them"); *United States v. Whitten*, 706 F.2d 1000, 1012-13 (9th Cir. 1983), *overruling on other grounds recognized by United States v. Rodriguez-Rodriguez*, 441 F.3d 767, 771 (9th Cir. 2006) (explaining that in *Wright* and *Turkal*, "agents lawfully came into possession of tapes or films whose contents they listened to or viewed without first obtaining a warrant. Their purpose was clearly exploratory. It was this deliberate exploration . . . that made the 'plain view' exception inapplicable").

As applied in the instant case, Agent Colby could properly seize the DVR and recordings under the plain view doctrine. To search the DVR and audio recordings, however, the Government should have first sought a search warrant. Again, as discussed above, the Government could not rely on the search warrant issued by the undersigned because it lacked any probable cause as to audio and video recordings, and therefore was invalid as to this evidence. Thus, these invalid portions of the search warrant would have to be severed out, *see United States v. Cardwell*, 680 F.2d 75, 78 (9th Cir. 1982), leaving a search warrant that did not permit the search of audio and video recordings. Because the Government lacked a warrant to view the DVR, the audio and video recordings contained therein will be suppressed.

///

///

## IV. CONCLUSION

For the reasons set forth above, the Court GRANTS Defendant's motion to suppress the video and audio recordings seized during the April 26, 2012 search of Defendant's residence.

IT IS SO ORDERED.

Dated: November 1, 2016

_____
KANDIS A. WESTMORE
United States Magistrate Judge